IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JEREMY HEITZMAN,**<br>and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>**CALVERT'S EXPRESS AUTO SERVICE & TIRE, LLC,**<br><br>   Defendant. | Case No. 2:22-cv-02001-JAR-ADM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION AND COURT SUPERVISED NOTICE
TO PUTATIVE CLASS MEMBERS PURSUANT TO 29 U.S.C. § 216(b)**

**I.  INTRODUCTION**

The Fair Labor Standards Act permits an employee to bring an action to recover wages owed to "himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Plaintiff respectfully requests that the Court conditionally certify the following class under the FLSA:

> All Current and Former Employees Who Were Paid a Day Rate While Working For Calvert's Express Auto Service & Tire Anywhere In The United States, At Any Time From October 21, 2018, Through The Date The Court Grants Conditional Certification.

The Putative Class Members that Plaintiff seeks to represent performed similar job duties, were all subject to the same company-wide policy, and suffered a common injury.

Plaintiff has met the lenient standard for conditional certification, and he respectfully requests that this Court conditionally certify this case as a collective action and authorize notice to be sent to the Putative Class Members. Notice at this stage is critical so that these workers can make an informed decision about whether to join this suit and stop the statute of limitations from running on their claims for unpaid overtime compensation.[1] Indeed, courts note that resolving conditional certification quickly because "the claims of potential plaintiffs, 'die daily'" is of paramount importance. *Privette v. Waste Pro of N. Carolina, Inc.*, No. 2:19-CV-3221-DCN, 2020 WL 1892167, at *9 (D.S.C. Apr. 16, 2020) (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997)).

## II. FACTUAL BACKGROUND

Calvert's Express Auto Service & Tire, LLC ("Calvert's") operates auto body repair and maintenance services throughout Missouri, Illinois, and Kansas. *See* Exhibit A to this Motion (Decl. of Jeremy Heitzman, ¶ 3)[2]; *see also* ECF No. 1, ¶ 21 (the "Complaint"), *admitted in* ECF No. 28, ¶ 21 (Calvert's Answer). To run its stores, Calvert's employed managers, like Plaintiff and the Putative Class Members, and paid them a day rate but no

---

[1] Unlike Rule 23 class actions in which the statute of limitations is tolled for all potential class members with the filing of the complaint, the statute of limitations under the FLSA is not tolled with the commencement of the action or even with an order granting conditional certification. *See Fisher v. Michigan Bell Telephone Co.*, C.A. 2:09-cv-10802, 2009 WL 3427048, at *8 (E.D. Mich. Oct. 22, 2009). Rather, the statute of limitations continues to run on each individual's claim until they file their written consent to join the action with the court. *See id*.

[2] While Plaintiff submits only one declaration from an employee of Calvert's, this fact does not support denial of conditional certification. *See, e.g., Kerr v. K. Allred Oilfield Servs., LLC*, No. 2:20-CV-00477-WJ-SMV, 2020 WL 6799017, at *4 (D.N.M. Nov. 19, 2020) (citing cases).

overtime. Ex. A, ¶¶ 8–9; Complaint, ¶¶ 2-4, 11, 22-23, 25, 31; Answer, ¶¶ 4, 11, 25, 31; *see also* Exhibit B (Class List of managers with their names redacted and their day rates[3] produced by Calvert's). (Interestingly, after Plaintiff filed this lawsuit, Calvert's may have started paying a guaranteed minimum salary to the Putative Class Members. *Id*.). Calvert's has admitted that it paid managers like Heitzman a day rate but no overtime and that it classified its day-rate employees as exempt from overtime. Exhibit C (excerpts of Calvert's responses to Requests for Admission, Nos. 1 & 2).

Moreover, despite paying Plaintiff and the Putative Class Members a day rate but no overtime, Calvert's failed to pay them a guaranteed minimum salary of at least $684/week as required to exempt them from overtime under the FLSA. Ex. A, ¶¶ 8–9; Complaint, ¶¶ 7, 26;  29 C.F.R. § 541.600; *see also* 29 C.F.R. § 541.604(b) (providing that a salary may be computed on a daily basis without losing the exemption "if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days, or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned"). Plaintiff and the Putative Class Members, who worked more than 40 hours nearly every week, did not get paid if they did not work. Ex. A, ¶¶ 8, 9, 12; Complaint, ¶ 4, 26-27; Ex. C (Calvert's admission, No. 3, that Plaintiff worked more than 40 hours/week).

---

[3] The Class List produced by Calvert's shows the day rate for Plaintiff and each Putative Class Member indentified therein, which ranges from $110 to $180 per day, in a column mislabeled as "Original Salary" instead of the admitted day rate. Ex. B.

3

A review of just a sampling of Plaintiff's pay records produced by Calvert's further shows that his compensation was paid based on a day rate and not any minimum guaranteed salary. Ex. D (exceprts of Plaintiff's pay records produced by Calvert's). And the Class List produced by Calvert's shows no variance in its day-rate/no-overtime compensation policy for Plaintiff and the Putative Class Members aside from amounts. Ex. B. This similarity, as shown in the Class List, holds true regardless of division or precise job title. *Ibid*. (showing Plaintiff and the Putative Class Members from two different divisions and all considered managers [shop or district]); *see also* Complaint, ¶ 24 ("While exact job titles may differ, these workers were subjected to the same or similar illegal pay practices for similar work."). The lack of variance based on location would be expected because, under Calvert's Employee Handbook, it treats its employees as interchangeable cogs subject to transfer to any location on pain of termination. Exhibit E (exceprts of Calvert's Employee Policies and Procedures Handbook, § 2.2).

Although the merits are not at issue in this Motion, because Plaintiff and the Putative Class Members were not paid a salary consistent with the requirements of any overtime exemptions, such exemptions are inapplicable in this case. *See* 29 C.F.R. § 541.600. Further, paying non-exempt employees a day rate but no overtime violates the FLSA and, also, subjects the employer to liquidated damages. *See, e.g., Mumby v. Pure Energy Services (USA), Inc.*, 636 F.3d 1266, 1272 (10th Cir. 2011). Although the merits are not in issue, this

4

is the type of alleged uniform, company-wide, FLSA-violating pay practice that should proceed collectively under the FLSA.

Regardless of location or job title, Calvert's pays its manager-employees a day rate but no overtime and no salary, and they are not paid if they do not work. Thus, Calvert's day-rate employees were all uniformly affected by Calvert's alleged FLSA-violating policy. And based on conversations with other day-rate employees, Plaintiff believes that other current and former employees would be interested in joining this lawsuit. *See* Ex. A, ¶ 16. Finally, when given the opportunity to proffer any basis for the notion that Plaintiff and the Putative Class Members are not similarly situated for purposes of proceeding collectively under the FLSA, Calvert's refused and merely objected. Exhibit F (excerpts of Calvert's interrogatory answers, No. 13).

### III. ISSUE PRESENTED

The issue herein is whether the Putative Class Members—current and former Day-Rate Employees—should be notified about the existence of this action so that they can make an informed decision about whether to join this suit and stop the statute of limitations from running on their claims for unpaid wages and overtime compensation, and whether Plaintiff has met the lenient standard for conditional class certification under § 216(b) of the FLSA. The merits of Plaintiff's claims or Calvert's defenses are not before the Court at this time; nor are they an appropriate inquiry for purposes of

conditional certification. *See Barnwell v. Corr. Corp. of Am.*, No. 08-2151-JWL, 2008 WL 5157476, at *5 (D. Kan. Dec. 9, 2008).

## IV. ARGUMENT AND AUTHORITY

### A. Legal Standards for Collective Action Notice under the FLSA

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The standard for certification at this notice state is lenient and typically permits conditional certification. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001); *Lundine v. Gates Corp.*, No. 18-1235-EFM, 2019 WL 3034792, at *2 (D. Kan. July 11, 2019). Indeed, § 216(b) requires only a showing that an employee is suing his employer for himself and on behalf of other employees "similarly situated." *See Thiessen*, 267 F.3d at 1102 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–16 (5th Cir 1995)). The plaintiff's claims need not be **identical** to the potential opt-ins—just **similar**. *See Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1312 (D.N.M. 2017) (*citing Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)).

Courts in the Tenth Circuit, including this one, use the two-step "*Lusardi*" approach to determine whether to certify an FLSA collective action. *See Thiessen*, 267 F.3d at 1105; *Lundine*, 2019 WL 3034792, at *1–2; *McCoy v. Over Easy Mgmt., Inc.*, No. 14-CV-01309-EFM, 2015 WL 1578627, at *2 (D. Kan. Apr. 9, 2015); *Allen v. Mill-Tel, Inc.*, No. 11-1143-EFM-

KGS, 2012 WL 2872160, at *4 (D. Kan. July 12, 2012). The first step, known as the "notice stage 'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Lundine*, 2019 WL 3034792, at *2 (citing *Thiessen*, 267 F.3d at 1102). "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Blankenship v. Kwick Rentals, LLC*, No. CIV-15-1057-D, 2016 WL 4734686, at *4 (W.D. Okla. Sept. 9, 2016).

When making the determination at the first "notice" stage, courts do not reach the merits of the case, focusing instead on whether the complaint and other allegations show that potential class members are "similarly situated."[4] *See Gipson v. Sw. Bell Tel. Co.*, No. 08-CV-2017 EFM/DJW, 2009 WL 1044941, at *1 (D. Kan. Apr. 20, 2009); *Gieseke v. First Horizon Home Loan Corp.*, 408 F.Supp.2d 1164, 1166 (D. Kan. 2006); *Blankenship,* 2016 WL 4734686, at *5. At this first stage, "a court need only consider the substantial allegations of the complaint along with any supporting affidavits or declarations." *Fuentes v. Compadres, Inc.*, No. 17-CV-01180-CMA-MEH, 2018 WL 1128517, at *3 (D. Colo. Mar. 2, 2018); *see also Jancich v. Stonegate Mortg. Corp.*, No. 11-2602-EFM-KMH, 2012 WL 380287, at *2 (D. Kan. Feb. 6, 2012) (finding plaintiff's complaint, along with two declarations

---

[4] The second step, initiated by the defendant-employer, takes place at the close of discovery when the court has more evidence to determine if the Putative Class Members are similarly situated. *See Gipson*, 2009 WL 1044941, at *1.

provided sufficient evidence for conditional certification); *Johnson v. Acad. Mortg. Corp.*, 2:12-CV-276 TS, 2012 WL 5416200, at *1 (D. Utah Nov. 2, 2012) (finding plaintiff's complaint, along with her affidavit, provided sufficient evidence for conditional certification). "'Generally, where putative class members are employed in similar positions, the allegations that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy, or plan.'" *Over Easy Mgmt.*, 2015 WL 1578627, at *3 (quoting *Renfro v. Spartan Computer Servs.*, 243 F.R.D. 431, 433–34 (D. Kan. 2007)).

### B. The "Similarly Situated" Standard

Courts in the Tenth Circuit have repeatedly certified FLSA cases involving workers paid a day rate but no overtime, recognizing that—at the notice stage—the standard is lenient and conditional certification is favored. *See, e.g., Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-CV-00580-KWR-KK, 2021 WL 5861184, at *6 (D.N.M. Dec. 10, 2021); *Robertson v. REP Processing, LLC*, No. 19-CV-02910-PAB-NYW, 2021 WL 4255027, at *3-4 (D. Colo. Sept. 16, 2021); *Morris v. MPC Holdings, Inc.*, No. 20-CV-02840-CMA-NYW, 2021 WL 4124506, at *2 (D. Colo. Sept. 9, 2021); *Jackson v. Powersat Commc'ns (USA) LP*, No. 2:20-CV-486 KRS/GJF, 2021 WL 2953129, at *3 (D.N.M. July 14, 2021); *Kerr v. K. Allred Oilfield Servs., LLC*, No. 2:20-CV-00477-WJ-SMV, 2020 WL 6799017, at *5 (D.N.M. Nov. 19, 2020). Such courts include this one. *Prince v. Kansas City Tree Care, LLC*, No. CV 19-2653-KHV, 2020 WL 3217103, at *3 (D. Kan. June 15, 2020) ("[P]laintiff has made

8

substantial allegations that putative collective action members were victims of a single decision, policy or plan, *i.e.*, a daily rate with no overtime pay. The Court will therefore conditionally certify plaintiff's proposed class for purposes of notice.).

Cases asserting a failure to pay a true salary are uniquely well suited for certification because similarity in job duties or work locations is less material to the ultimate question of whether the collective is similarly situated in terms of the alleged FLSA violating policy such that the question can be answered collectively. In *Swartz v. DJ Eng'g, Inc.*, the Court, ruling under the much more strict second step of *Lusardi*, found that the plaintiffs were similarly situated in their employment settings even though the class involved plaintiffs with wildly different job duties. No. 12-CV-01029, 2015 WL 4139376, at *8 (D. Kan. July 9, 2015). Some were engineers, some handled sales, and others were managers. *Id*. The plaintiffs asserted that the class members were similar because their claims relied on the same theory, failure to pay a true salary, "the [class] does not depend on the similarities (or differences) of their job duties or classifications." *Id*. The Court agreed stating, "[b]ut where, as here, plaintiffs assert a single statutory violation that applies to all of the applicable exemptions, these different job classifications do not defeat their status as similarly situated plaintiffs." *Id.*

As detailed above in the Factual Background section of this Motion, Plaintiff and the Putative Class Members have shown via the Complaint's allegation, Heitzman's sworn declaration, and Calvert's own discovery responses and production (as scarce as they

have proven to this point) that (a) Plaintiff and the Putative Class Members performed management duties assisting Calvert's customers; (b) they were all subject to Calvert's uniform company-wide corporate policy of improperly paying managers a day rate but neither overtime nor a guaranteed minimum salary; (c) they were non-exempt employees of Calvert's; (d) they routinely worked over forty hours in a workweek; (e) and other current and former managers employed by Calvert's were treated the same way. *See generally* Exs. A; C, E, F.

Calvert's uniform and systematic company-wide corporate policy of improperly paying its managers a day rate but neither overtime nor a minimum salary applies equally to the Plaintiff as it does to all of the Putative Class Members across the company. *See* Exs. A, ¶¶ 8–13; Ex. B. These substantial allegations amply show a company-wide policy or plan applicable to Plaintiff and the Putative Class Members that supports conditional certification.

Consequently, this Court should authorize notice to the Putative Class Members and allow Plaintiff to distribute the Notice/Consent forms attached hereto as Exhibit G to the Putative Class Members. Given the weight of evidence supporting conditional certification, and in light of Calvert's plain FLSA violations, the immediate issuance of Court-approved notice to the Putative Class Members is appropriate, within this Court's discretion, and necessary to fulfill the purposes of the FLSA.

## V. RELIEF SOUGHT

Plaintiff seeks the issuance of notice to all Putative Class Members and the disclosure of the names and contact information (including the addresses, e-mail addresses, and telephone numbers) of all current and former hourly non-exempt employees who worked for Calvert's at any time from October 21, 2018, through the date the Court grants conditional certification.

### A. Plaintiff's Proposed Schedule and Notice/Consent Form

To facilitate the notice process and preserve the rights of those who have not yet opted-in (or learned of this lawsuit), Plaintiff has attached a proposed Notice and Consent form to be approved by the Court. *See* Ex. G. Plaintiff has prepared these forms for this case by adapting various Notice and Consent forms previously approved by courts within the Tenth Circuit

Additionally, Plaintiff seeks an Order from this Court adopting the Notice Schedule identified in the Proposed Order. It provides for a 90-day notice period with a reminder notice. *See id*. Courts within the Tenth Circuit regularly find a 90-day notice is appropriate. *See Wass v. NPC Int'l, Inc.*, No. 09-2254-JWL, 2011 WL 1118774, at *11 (D. Kan. Mar. 28, 2011); *Aguilar v. Mgmt. & Training Corp.*, No. CV 16-050 WJ/GJF, 2017 WL 4277139, at *10 (D.N.M. Jan. 27, 2017), *report and recommendation adopted*, No. CV 16-050 WJ/GJF, 2017 WL 4534874 (D.N.M. Feb. 15, 2017); *Porter v. W. Side Rest., LLC*, No. 13-1112-JAR-KGG, 2014 WL 1642152, at *13 (D. Kan. Apr. 24, 2014).

### B. Courts Routinely Require the Production of Names, Addresses, E-Mail Addresses and Phone Numbers for the Notice Process.

Plaintiff respectfully requests that the Court order Calvert's to provide counsel for Plaintiff the names, current or last known addresses, e-mail addresses, and phone numbers for current and former hourly workers fitting the description of the conditionally certified class. Courts in the District of Kansas and throughout the Tenth Circuit routinely require defendant-employers to produce the requested information. *See Lundine*, 2019 WL 3034792, at *4 (ordering the defendant to provide last known addresses, e-mail addresses, and phone numbers) (citations omitted); *Over Easy Mgmt.*, 2015 WL 1578627, at *4; *Roberts v. PATCO Elec. Servs., Inc.*, No. CIV-16-720-M, 2017 WL 2635090, at *3 (W.D. Okla. June 19, 2017); *Thomas v. Image Line, LLC*, No. 2:16-cv-00845-DBP, ECF No. 31 (D. Utah Feb. 6, 2017) (granting unopposed motion for conditional certification and ordering defendants to provide last known address, e-mail address, and phone number).

Plaintiff seeks to disseminate the Notice and Consent form to the Putative Class Members via mail, e-mail[5], text message[6], and posting. *See Prince v. Kansas City Tree Care*,

---

[5] Plaintiff requests that the Putative Class Members be given the option to execute their consent forms on-line through an electronic signature service. This service allows Putative Class Members to sign their consent form electronically by clicking on a link in an encrypted email or text-message designated only for that user, which in turn takes to them to a website where they can review the document they are signing, click a box indicating they have read and understood the consent form and insert information such as their name and date. Users are instantaneously provided with a PDF copy of the form they signed, and a copy of the form is made accessible to Plaintiff's counsel who will in turn file the same with the Court, just as if such document had been received via regular mail. *See Landry*, 252 F. Supp. 3d at 1130 (allowing electronic execution of consent forms).

[6] Plaintiff proposes sending a short message with a hyperlink Putative Class Members could click to view the entire Court Authorized notice. The language below mirrors what Plaintiff's Counsel has submitted to

*LLC*, No. CV 19-2653-KHV, 2020 WL 3217103, at *4 (D. Kan. June 15, 2020) (approving notice via email and text message); *Hancock v. Lario Oil & Gas Co.*, No. 219CV02140JARKGG, 2019 WL 3494263, at *4 (D. Kan. Aug. 1, 2019) (same); *Smith v. Pizza Hut, Inc.*, 09-CV-01632-CMA-BNB, 2012 WL 1414325, at *10 (D. Colo. Apr. 21, 2012) (ordering defendant to post notice in employee areas until opt in period closes); *Sloan v. Renzenberger, Inc.*, 10-2508-CM-JPO, 2011 WL 1457368, at *4 (D. Kan. Apr. 15, 2011) (same); *Pinkston v. Wheatland Enterprises, Inc.*, 11-CV-2498, 2013 WL 1191207, at *5 (D. Kan. Mar. 22, 2013) (same).

Courts in the Tenth Circuit have found that authorizing notice via multiple methods will, "increase the probability of apprising collective action members of their rights." *Bagoue v. Developmental Pathways, Inc.*, 16-CV-01804-PAB-NRN, 2019 WL 1358842, at *4 (D. Colo. Mar. 25, 2019) (quoting *Lindsay v. Cutters Wireline Serv., Inc.,* No. 17-cv-01445-PAB-KLM, 2018 WL 4075877 at *3 (D. Colo. Aug. 27, 2018)). Magistrate Judge Edison of the Southern District of Texas may have stated it best,

> When playing darts, one has a much better chance of hitting a bull's-eye if he uses more than one dart. The same reasoning applies here. Utilizing two means of delivery—first class mail and email—is more likely to result in the potential plaintiffs receiving notice of the lawsuit than by a single delivery method.

---

other courts who have approved notice via text. **"The United States District Court for the Western Division of Texas has authorized this text notice to inform you of your right to join a lawsuit for unpaid overtime filed against Nixon Engineering. Click here to read the Court authorized notice. If you have questions please contact the law offices of Anderson Alexander, PLLC at 361-452-1279 or visit A2XLaw.com."** *See Peery v. Nixon Engineering, LLC*, Case No. 6:18-CV-00358, ECF No. 35 (W.D. Tex. Jan. 9, 2020) (attached as Ex. H).

*Wade v. Furmanite Am., Inc.*, No. 3:17-CV-00169, 2018 WL 2088011, at *7 (S.D. Tex. May 4, 2018) (recognizing that social networking might soon replace email as the most effective means of reaching potential class members).

Moreover, courts have recognized that notice sent via e-mail is no longer the *best* method by which to inform Putative Class Members of their right to join a collective action and have authorized text-message notice, stating that text-message notice will, "increase the chance of the class members receiving and reading the notice." *Landry*, 252 F. Supp. 3d at 1129; *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 436 (D.N.M. 2018) ("[N]otice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved").

Finally, to effectuate the broad remedial purposes of the FLSA, this Court should also allow Plaintiff to send a reminder notice halfway through the notice period to Putative Class Members who have not responded to the original notice. A reminder notice will help ensure that Putative Class Members are informed of their right to opt-in to this matter. Courts across the Tenth Circuit regularly approve of reminder notices. *See Valencia v. Armada Skilled Home Care of NM, LLC*, No. CV 18-1071 KG/JFR, 2020 WL 2768977, at *4 (D.N.M. May 28, 2020); *Sanders v. Glendale Rest. Concepts, LP*, No. 19-CV-01850-NYW, 2019 WL 6799459, at *5 (D. Colo. Dec. 13, 2019); *Mayhew v. Angmar Med. Holdings, Inc.*, No. 18-2365-JWL, 2019 WL 6255109, at *4 (D. Kan. Nov. 22, 2019)

("Recognizing that deadline reminders are now fairly commonplace in this context, the court will permit the sending of one reminder notice").

**VI. CONCLUSION**

Plaintiff has more than met his minimal burden to show that other similarly situated individuals exist and that notice should issue to the Putative Class Members. In order to facilitate the purposes of the FLSA's collective action provisions, Plaintiff respectfully requests that the Court grant this Motion and: (1) conditionally certify this action for purposes of notice and discovery; (2) order that judicially-approved notice be sent to all Putative Class Members; (3) approve the form and content of Plaintiff's proposed judicial notice and reminder notice; (4) order Calvert's to produce to Plaintiff's Counsel the contact information (including the names, address, telephone number and e-mail address) for each Putative Class Member in a usable electronic format; (5) authorize a 90-day notice period for Putative Class Members to join the case; and (6) authorize notice to be disseminated via First Class mail, e-mail, posting and text-message to the Putative Class Members.

| | |
|---|---|
| Dated: June 10, 2022 | Respectfully submitted, |
| **PAUL LLP** | **ANDERSON ALEXANDER, PLLC** |
| /s/ *Laura C. Fellows* | Clif Alexander (*Pro Hac Vice*) |
| Richard M. Paul III (KS #17778) | Texas Bar No. 24064805 |
| Laura C. Fellows (KS #26201) | Austin W. Anderson (*Pro Hac Vice*) |
| 601 Walnut Street, Suite 300 | Texas Bar No. 24045189 |
| Kansas City, Missouri 64106 | 819 N. Upper Broadway |
| Telephone: (816) 984-8100 | Corpus Christi, Texas 78401 |
| Rick@PaulLLP.com | Telephone: (361) 452-1279 |
| Laura@PaulLLP.com | Facsimile: (361) 452-1284 |
| | clif@a2xlaw.com |
| | austin@a2xlaw.com |

**COUNSEL FOR PLAINTIFF AND
THE PUTATIVE CLASS MEMBERS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on June 10, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Laura C. Fellows*