IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEREMY HEITZMAN, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>CALVERT'S EXPRESS AUTO SERVICE & TIRE, LLC,<br><br>      Defendant. | Case No. 22-CV-2001-JAR-ADM |

## MEMORANDUM AND ORDER

Plaintiff Jeremy Heitzman brings this putative collective action under the Fair Labor Standards Act ("FLSA"), and putative class action under the Missouri Minimum Wage Law ("MMWL"), against Defendant Calvert's Express Auto Service & Tire, LLC. Specifically, Plaintiff alleges that Defendant misclassified certain employees as exempt from overtime requirements by paying them a day rate for each day worked and not paying overtime if they worked beyond forty hours per week.

This matter is before the Court on Plaintiff's Motion for Conditional Certification and Court Supervised Notice to Putative Class Members Pursuant to 29 U.S.C. § 216(b) (Doc. 58). For the reasons explained below, the Court grants Plaintiff's motion to conditionally certify a collective action, but limits the scope of the collective action to the positions discussed in Plaintiff's declaration. The Court authorizes written notice to be sent to putative plaintiffs after Plaintiff modifies his proposed notice, confers with Defendant about the specific items below, and files a revised joint notice and consent form in compliance with this Order.

I.  **Legal Standard**

An action under the FLSA may be brought "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."[1] Unlike a class action under Fed. R. Civ. P. 23, to participate in a FLSA collective action, all plaintiffs must "consent in writing to become such a part," and each consent must be "filed in the court in which such action is brought."[2]

The court may certify an opt-in collective action so long as the aggrieved employees are similarly situated.[3] Section 216(b) does not define "similarly situated," but the Tenth Circuit has approved an *ad hoc* case-by-case basis for determining whether employees are "similarly situated" for purposes of § 216(b).[4] This involves a two-step inquiry.[5] The first step occurs at the "notice stage" of the proceedings. Here, the court determines if certification is proper for purposes of sending notice of the action to potential collective action members.[6] At this stage, the court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan."[7] This standard is lenient and typically results in conditional certification.[8] In reviewing a motion for conditional certification, "the court does not weigh evidence, resolve factual disputes, or rule on the merits of plaintiffs'

---

[1] 29 U.S.C. § 216(b).

[2] *Id.*

[3] *Id.*

[4] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102, 1105 (10th Cir. 2001).

[5] *Id.* at 1105.

[6] *Id.* at 1102.

[7] *Id.* (alterations omitted) (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)); *see also Blair v. TransAm Trucking, Inc.*, 309 F. Supp. 3d 977, 1001 (D. Kan. 2018) (citing *Thiessen*, 267 F.3d at 1102).

[8] *Blair*, 309 F. Supp. 3d at 1001 (citing *Thiessen*, 267 F.3d at 1103).

claims."[9]  Generally, courts in this district have limited the scope of their review on a motion for conditional certification to the allegations in the plaintiffs' complaints and supporting affidavits.[10]

The second step—requiring the court to apply a stricter standard to ensure that plaintiffs are actually similarly situated—comes after discovery is complete and is usually prompted by defendants filing a motion to decertify.[11]

## II. Background

Because Plaintiff's motion is brought at the notice-stage of conditional certification, the Court recites the following allegations drawn from Plaintiff's Complaint,[12] his declaration,[13] and other notice-stage discovery that he submitted in support of the motion for conditional certification.[14]

Defendant Calvert's Express Auto Service & Tire, LLC ("Calvert's") is a company that provides autobody repair and maintenance services throughout the states of Missouri, Illinois, and Kansas.  Each location services customers by performing routine maintenance and repair work on customers' vehicles.  Plaintiff Jeremy Heitzman worked for Defendant as a Shop Manager from approximately April of 2018, until approximately September of 2021.  During his Shop Manager training period, Plaintiff trained in Calvert's stores under other Shop Managers in Kansas City, Kansas; Blue Springs, Missouri; Belton, Missouri; Independence, Missouri; and

---

[9] *See, e.g.*, *Koehler v. Freightquote.com, Inc.*, 93 F. Supp. 3d 1257, 1263 (D. Kan. 2015) (quoting *Folger v. Medicalodges, Inc.*, No. 13-1203-MLB, 2014 WL 2885363, at *2 (D. Kan. June 25, 2014)).

[10] *See, e.g.*, *James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 908 (D. Kan. 2021); *Renfro v. Spartan Comput. Servs., Inc.*, 243 F.R.D. 431, 434 & n.4 (D. Kan. 2007).

[11] *Thiessen*, 267 F.3d at 1102–03.

[12] Doc. 1.

[13] Doc. 59-1.

[14] Docs. 59-3, 59-5, 59-6, 59-9, 59-10.

3

Overland Park, Kansas.  During his work as a full-time Shop Manager, he first worked at the store in Belton, Missouri, and then was transferred to the Independence, Missouri location in approximately December of 2019.  Around May of 2021, Plaintiff was transferred to Calvert's Kansas City, Kansas location.

As a Shop Manager, Plaintiff was responsible for the overall management of the location where he worked, including supervising employees, ensuring the shop operated effectively, and communicating with and helping customers.  When Plaintiff trained at multiple locations with different Shop Managers, each one had the same job duties and responsibilities.  And during the hiring process, Plaintiff was informed that the Shop Manager position is the same across the entire company.  He was also told that he could be transferred to another shop at any time but his job duties would not change, as all Shop Managers perform the same job duties regardless of location or division.

Plaintiff reported directly to District Manager John Bluml, who managed multiple stores.  Plaintiff understood that all District Managers performed the same job duties.  Plaintiff occasionally spoke with District Manager Tyler Throckmorton, who had the same job duties as Bluml.  All District Managers oversee locations in their division and manage the Shop Managers in charge of those locations.

Calvert's was split into two divisions: the St. Louis Division and the Kansas City Division.  Each division was supposed to have two District Managers who helped manage operations of the stores in their division.  But during Plaintiff's employment, there was typically only one District Manager over his division.  The divisions operated under the same policies and procedures that govern all Calvert's employees.  Employees of both divisions had the same pay structures and job duties.  Plaintiff saw that each location where he worked operated under the

same company-wide policies and procedures. When Plaintiff was hired, Calvert's explained to him that all locations follow the same rules and procedures, and all employees perform the same work, location to location.

As a Shop Manager with Calvert's, Plaintiff was paid a day rate of $120.00, plus a daily bonus that ranged from $20 to $40. Plaintiff does not know what the bonus was based on but he typically always received it for any day that he worked. Plaintiff was only paid for days that he worked and was not guaranteed a minimum amount of weekly pay. If Plaintiff only worked one day in a week, he would only receive his day rate and daily bonus for that one day. Defendant's day rate employees were classified as exempt from overtime requirements during this period of time.

Other Shop Managers and District Managers were also paid a day-rate basis with no overtime. Plaintiff was told by Calvert's when he was hired that all Calvert's Shop Managers are paid a "daily salary"—their set amount for each day worked—plus a bonus but no overtime. The owner of Calvert's, Gary Calvert, told Plaintiff that all Shop Managers are paid the same way.

As a Shop Manager for Calvert's, Plaintiff was required to work overtime hours on a regular basis, nearly every week. Other Shop Managers and District Managers also had to work overtime hours on a regular, if not weekly, basis. When Plaintiff was hired, Calvert's told him that each location is run by one Shop Manager, who must open and close the store each day. Based on his experience, Calvert's stores operate from 7:30 a.m. to 6:00 p.m. Monday to Friday and from 8:00 a.m. to 5:00 p.m. on Saturday. Because Shop Managers must open and close, they must arrive before the store opens to prep the store for the day and stay after closing time. Therefore, Shop Managers typically work sixty hours per week. There was a period of time

where the Shop Managers did not work on Saturdays, but even then, they worked approximately fifty-two hours per week.

Plaintiff observed that Bluml worked a similar schedule. He often called Plaintiff to check in at opening or at closing. He also had to be available for calls an hour before the shops opened in case a Shop Manager was going to be absent. Pursuant to Calvert's policies and procedures, Shop Managers who were sick or otherwise unable to attend work had to call their District Manager by 6:00 a.m. on that workday to inform them they were going to be absent. Plaintiff understood that Bluml was always working whenever Plaintiff was. Also, when Plaintiff worked at the Independence location, he regularly drove by the main office, and frequently noticed that Bluml, Throckmorton, and other District Managers were at the main office after hours and on Sundays when shops were closed.

Although Plaintiff regularly worked in excess of forty hours per week, Calvert's did not pay him or any other Shop Managers or District Managers overtime compensation. Calvert's treated Plaintiff, his fellow Shop Managers, and District Managers the same way; they were not paid overtime compensation when they worked more than forty hours in a week. Gary Calvert told Plaintiff that this was Calvert's standard practice.

Plaintiff submitted with his motion a Class List that was produced by Calvert's during discovery.[15] This list includes rows for 106 unidentified employees and columns for start date, end date, job title, work location, original salary, original additional consideration, total pay, pay change date, pay raise change salary, pay raise additional consideration, and pay change total. The final column is for "Weekly Base Pay." Ten employee rows include a weekly base pay entry with each one indicating November 21, 2021, for that pay change date. All employees on

---
[15] Doc. 59-9.

the Class List have Shop Manager or District Manager job titles.  This list is consistent with Plaintiff's knowledge and experience working for Defendant.

### III.  Discussion

#### A.  Conditional Certification

Plaintiff moves to conditionally certify the following class of individuals:

> All Current and Former Employees Who Were Paid a Day Rate While Working For Calvert's Express Auto Service & Tire Anywhere In The United States, At Any Time From October 21, 2018, Through The Date The Court Grants Conditional Certification.[16]

Defendant objects that Plaintiff has not met his burden of showing substantial similarity between himself and the proposed collective action members, and that if the Court finds substantial similarity, it should be limited to certain job descriptions and a shorter time period.  The Court addresses each argument in turn.

#### 1.  Substantial Similarity

Defendant argues that Plaintiff has not shown that members of the putative class are similarly situated to him.  According to Defendant, a policy of paying employees a day rate is not, standing alone, a violation of the FLSA.  It is only a violation if Defendant paid the employee a day rate, the employee worked at least forty hours per week, *and* Defendant failed to ensure the employee received a minimum weekly salary plus overtime if warranted.

As stated above, at this stage, the Court does not consider the merits of Plaintiff's overtime claim and does not weigh evidence.  Instead, the Court considers the allegations in Plaintiff's Complaint and supporting documentation to determine if there are substantial

---

[16] Doc. 58 at 1.

allegations that the putative class members were together the victims of a single decision, policy or plan. Plaintiff meets this lenient standard.

As Defendant concedes, Plaintiff's declaration sufficiently alleges that he regularly worked more than forty hours per week but was paid a day rate plus bonus that was not based on his overtime hours actually worked. Plaintiff also states in his declaration that this pay policy applied to all other Shop Managers and District Managers, and that he has personal knowledge of other employees in those positions regularly working overtime. He declares that he was told, including by Defendant's owner, that the same pay policy that applied to him applied to all Shop Managers and District Managers. Plaintiff provides detail about his job responsibilities, the District Manager's job responsibilities, and the fact that both positions were subject to the same policies and job duties throughout the Calvert's operation.

Defendant argues that Plaintiff's declaration contains hearsay and is conclusory. But Plaintiff contends that he has personal knowledge of the statements in his Declaration, and the statements therein are based on his own understanding, observations, and conversations. And at the notice stage of the proceedings, Plaintiff's declaration need not be disregarded due to potential hearsay.[17] "Requiring a plaintiff to present evidence at this stage that meets the standards of the Federal Rules of Evidence 'fails to take into account that the plaintiff has not yet been afforded an opportunity, through discovery, to test fully the factual basis of his case.'"[18] And Plaintiff's declaration is supported by the information in the Class List provided by Defendant. That list shows that during the relevant time period, only ten employees were paid a

---

[17] *See, e.g.*, *Swartz v. D-J Eng'g, Inc.*, No. 12-CV-1029-JAR, 2013 WL 5348585, at *4 (D. Kan. Sept. 24, 2013).

[18] *Id.* (quoting *Fisher v. Mich. Bell Tele. Co.*, 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009)); *see also James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 911 (D. Kan. 2021) ("There's no need to adopt a more demanding standard at this early stage when Tenth Circuit guidance instructs that Phase II of discovery will afford both sides an opportunity to dig deeper into the facts.") .

weekly base pay, and that this did not begin until November 21, 2021, after the Complaint in this case was filed. This list is consistent with Plaintiff's knowledge and experience working for Defendant.

The Court finds that Plaintiff has made a colorable showing that the putative plaintiffs worked for the same employer, performed similar duties, and that their allegations of FLSA overtime violations are based on the same policy of not paying day-rate workers overtime hours actually worked. Therefore, he has met the requisite standard for demonstrating substantial similarity at the notice stage of the conditional certification process.

### 2. Class Definition

Defendant argues that if the Court does find substantial similarity, it should limit the scope of the class to the job titles discussed by Plaintiff in his declaration, and to a shorter period of time that aligns with the statute of limitations. Plaintiff objects to both modifications.

First, Defendant argues that Plaintiff's declaration only discusses two positions that were subject to a pay rate plan that allegedly violates the FLSA—Shop Managers and District Managers. Plaintiff responds that there is no need to limit the class of employees who receive notice of the collective action because the day rate violations alleged in the Complaint are per se violations regardless of job title. The Court agrees with Defendant that the class should be limited to Shop Managers and District Managers.

Although Plaintiff alleges in the Complaint that the day-rate policy is company-wide, he does not state this fact in his declaration. His declaration provides specific details about the job duties, hours worked, and pay structures of only two positions— the Shop Manager and District Manager positions.[19] While Plaintiff attests that Defendant generally had company-wide policies

---

[19] *Compare Hose v. Henry Indus., Inc.*, 49 F. Supp. 3d 906, 918 (D. Kan. 2014), *order clarified sub nom*. *Hose v. Henry Indus.*, No. 13-2490-JTM, 2014 WL 5510927 (D. Kan. Oct. 31, 2014) (rejecting Defendant's

9

and procedures, he includes no allegation or information about how the pay plan that applied to him applied to any other employees beyond Shop Managers and District Managers. Moreover, the Class List only includes employees and past employees holding those two positions. Because Plaintiff provides no indication that the allegedly violative pay policy applied to employees other than Shop Managers and District Managers, the Court declines to certify a collective action beyond those two positions.

Next, Defendant argues that the date range in the proposed class definition—from October 21, 2018, until the date of the Court's order—is too broad because this period exceeds the applicable statute of limitations for potential plaintiffs. Plaintiff responds that he "will only seek to send notice to those individuals who have worked for Defendant within the three-year period preceding the date" this Court rules, but urges that the dates in the proposed class definition are correct because they "encompass the full scope of Plaintiff's claims."[20]

The statute of limitations under the FLSA is two years, or three years for willful violations.[21] The statute is triggered for a claimant as follows:

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.[22]

---

request to specify certain job titles in class definition where the plaintiff made "allegations of a company-wide, uniform policy") *with Hobbs v. Tandem Env't Sols., Inc*., No. 10-1204-KHV, 2011 WL 484194, at *2 (D. Kan. Feb. 7, 2011) (limiting proposed class where there were no allegations of company-side policies or practices).

[20] Doc. 64 at 8.

[21] 29 U.S.C. § 255(a).

[22] 29 U.S.C. § 256.

Here, Plaintiff filed his Complaint on October 21, 2018.[23] Therefore, a look-back period beginning on October 21, 2018, may encompass Plaintiff's claims since he filed his Complaint on October 21, 2021, even though the commencement date will be later for the opt-in Plaintiffs, whose statute of limitations continues to run until their consents are filed.[24] Therefore, at this notice stage of the proceedings, the Court will not disturb the date range in Plaintiff's proposed class, which begins three years before the date the Complaint was filed.[25] Plaintiff understands that the statute of limitations will not extend back this far for any of the putative plaintiffs who join this action after receiving notice, and he represents that he will only send notices to those individuals who have worked for Defendant within the three-year period preceding the date of this Order.

Accordingly, the Court finds that Plaintiff's proposed class definition should be modified as follows:

> All current and former Shop Managers and District Managers who were paid a day rate while working for Calvert's Express Auto Service & Tire anywhere in the United States, at any time from October 21, 2018, through the date the Court grants conditional certification.

**B.    Notice**

The benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."[26] Plaintiff has submitted a proposed notice and consent

---

[23] The Complaint represents that "[t]he written consent of Jeremy Heitzman is hereby attached as Exhibit 'A.'" Doc. 1 at 3 n.1. But there is no Exhibit A attached to the Complaint filed with this Court.

[24] *See Renfro v. Spartan Comput. Servs., Inc.*, 243 F.R.D. 431, 435 n.5 (D. Kan. 2007) (citing *Pivonka v. Bd. of Cnty. Comm'rs of Johnson Cnty., Kan.*, No. 04-2598-JWL, 2005 WL 1799208, at *4 (D. Kan. July 27, 2005)).

[25] *Accord Valverde v. Xclusive Staffing, Inc.*, No. 16-CV-00671-RM-MJW, 2018 WL 4178532, at *3 (D. Colo. Aug. 31, 2018).

[26] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

form with his motion to conditionally certify.[27]  Defendant objects to Plaintiff's proposed notice on the basis that the opt-in deadline should be sixty rather than ninety days, and because the references to the Court in the notice impermissibly suggest judicial endorsement.  Defendant asks that the Court order the parties to meet and confer and then jointly propose a revised consent form modeled after the form approved in *Fortna v. QC Holdings, Inc.*[28]

The Court is mindful that "[u]nder the FLSA, the Court has the power and duty to ensure that the notice is fair and accurate, but it should not alter plaintiff's proposed notice unless such alteration is necessary."[29]  Therefore, while the Court addresses Defendant's specific objections to Plaintiff's proposed notice below, it declines to order Plaintiff to revise the entire notice, or to require that the parties use the *Fortna* notice attached to Defendant's response as a model.

### 1. Opt-In Period

Plaintiff proposes that putative plaintiffs be required to file their consent forms ninety days from the date the notice is mailed.  Defendant objects that Plaintiff fails to provide a basis for this time period and urges the Court to impose a sixty-day deadline instead.  Both sides cite cases within this district that have approved of their requested time periods with little to no analysis, and neither side offers any reason why a ninety- versus sixty-day deadline is appropriate in *this* case.  District courts within the Tenth Circuit regularly find opt-in periods up to ninety days to be reasonable.[30]  Absent a specific argument by Defendant about why sixty

---

[27] Doc. 59-7.

[28] *See* Doc. 63-1; *Fortna v. QC Holdings, Inc.*, No. 06-cv-00016-CVE-PJC, Doc. 40 (N.D. Okla May 2, 2006).

[29] *Prince v. Kansas City Tree Care, LLC*, No. 19-2653-KHV, 2020 WL 3217103, at *3 (D. Kan. June 15, 2020).

[30] *Landry v. Swire Oilfield Servs., LLC*, 252 F. Supp. 3d 1079, 1131 (D.N.M. 2017) (citations omitted); *see Wass v. NPC Int'l, Inc.*, No. 09-2254-JWL, 2011 WL 1118774, at *11 (D. Kan. Mar. 28, 2011) (describing a sixty-day opt-in period as "unusually short").

days would be prejudicial, or why it is more appropriate here, the Court grants Plaintiff's request for a ninety-day opt-in period.

### 2. Judicial Endorsement

Defendant argues that the proposed notice "repeatedly mentions the Court, which risks an appearance of judicial endorsement," yet, it does not specifically identify the proposed notice language to which it objects. Upon review, the proposed notice references the Court as follows: (1) the case caption; (2) the first section that describes why the recipients are receiving the notice; and (3) the second section that describes what the lawsuit is about. At the end of the second section, the proposed notice states: "The Court has not decided who is right but has authorized this notice to inform you of your right to join this lawsuit."[31]

The Supreme Court has counseled that in overseeing the notice process, trial courts "must be scrupulous to respect judicial neutrality . . . [and] must take care to avoid even the appearance of judicial endorsement of the merits of the action."[32] To that end, judges in this district consistently direct the parties to remove references to court authorization in collective action notices.[33] However, courts have allowed the case caption to appear in the notice, finding that it merely conveys that the notice is a court document.[34] The Court therefore allows the case caption to be included on the notice, which includes a reference to the Court. The Court also approves the language in the second section of the notice quoted above, which helps guard against any concern about judicial imprimatur. It clearly states that the Court is neutral and has

---

[31] Doc. 59-7 at 3.

[32] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).

[33] *See, e.g., Prince*, 2020 WL 3217103, at *3; *Swartz v. D-J Eng'g, Inc.*, No. 12-CV-1029-JAR, 2013 WL 5348585, at *7 (D. Kan. Sept. 24, 2013); *Clayton v. Velociti, Inc.*, No. 08-2298-CM, 2009 WL 304190, at *3 (D. Kan. Feb. 9, 2009).

[34] *See, e.g., Pogue v. Chisholm Energy Operating, LLC*, No. 20-cv-580-KWR-KK, 2021 WL 5861184, at *10 (D.N.M. Dec. 10, 2021).

not endorsed either side in this dispute. The remaining two references to the Court are in the first section of the notice, and discuss the fact that the Court "ordered" the notice be sent and has "allowed" or "certified" the collective action.[35] The Court agrees with Defendant that these references to the Court should be removed or reworded out of an abundance of caution.

### 3. Notice Procedures

In his motion, Plaintiff asks that the Court order Defendant to provide Plaintiff's counsel with the names, current or last known addresses, email addresses, and phone numbers for current and former hourly workers fitting the description of the conditionally certified collective action. Plaintiff also asks to disseminate the notice and consent form to the putative class members via mail, email, text message, and posting. Finally, Plaintiff asks the Court to allow him to send a reminder notice halfway through the notice period to putative class members who have not responded to the original notice. Defendant responds that the parties should be directed to meet and confer on these issues but does not specifically oppose any of Plaintiff's requests.

The Court grants Plaintiff's request for putative class members' names, current or last known addresses, email addresses, and phone numbers. Such information is commonly used to locate putative class members and Defendant provides no reason why it should not be required to provide it here.[36]

Additionally, absent a specific argument opposing Plaintiff's requested methods of dissemination, the Court grants Plaintiff's request for disseminating notice by mail, email, and text message.[37] However, the Court denies Plaintiff's request to disseminate the notice by

---

[35] Doc. 59-7 at 1–2.

[36] *See, e.g.*, *Koehler v. Freightquote.com, Inc.*, 93 F. Supp. 3d 1257, 1264 (D. Kan. 2015) (citations omitted).

[37] *See, e.g.*, *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017) (allowing notice via text message and email because "the law is on Plaintiff's side"); *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427,

posting it at Defendant's shop locations. Plaintiff provides no basis for this request, and given the Court's ruling that the class definition should be limited to Shop Managers and District Managers, and the fact that Defendant has provided a Class List already in this lawsuit, it is not clear that posting a notice would reach a larger class of employees than the other methods of dissemination.[38] Notice by mail, email, and text message should be sufficient to reach all putative class members.

Finally, the Court approves Plaintiff's request for a reminder notice halfway through the notice period aimed at the putative class members who have not responded to the first round of notices. Single reminder notices such as this one are typically permitted, and Defendant offers no specific reason why they should not be in this case.[39]

### 4. Meet and Confer

Except as specifically addressed above, the Court approves the Notice proposed by Plaintiff. Plaintiff shall provide a new notice form, revised in accordance with this Order, to Defendant for review by **October 11, 2022**. Defendant shall have two business days from the receipt date of the revised notice to assert any objection that the form does not comply with this Order. Defendant may not assert any new objection that it failed to raise in its opposition to the instant motion. If Defendant raises any proper objection, the parties shall confer, and involve the Court only if they are unable to resolve the issue among themselves. The revised joint proposed notice shall be filed no later than **October 17, 2022**.

---

436 (D.N.M. 2018); *Bryant v. Act Fast Delivery of Colo., Inc.*, No. 14-CV-00870-MSK-NYW, 2015 WL 3929663, at *5 (D. Colo. June 25, 2015).

[38] *See Koehler*, 93 F. Supp. 3d at 1266; *Nelson v. Firebirds of Overland Park, LLC*, No. 17-2237-JWL, 2018 WL 3023195, at *7 (D. Kan. June 18, 2018).

[39] *Nelson*, 2018 WL 3023195, at *7; *Mayhew v. Angmar Med. Holdings, Inc.*, No. 18-2365-JWL, 2019 WL 6255109, at *4 (D. Kan. Nov. 22, 2019).

For the first time in the reply, Plaintiff asks the Court to toll the statute of limitations during any meet-and-confer period until the date the notice issues. Although the Tenth Circuit has not addressed equitable tolling in FLSA collective actions, it may be appropriate under certain circumstances, according to district courts in this Circuit.[40] These courts typically look at certain factors to decide whether tolling is appropriate, and generally decline to find that "blanket" tolling is appropriate for hypothetical plaintiffs until both parties have an opportunity to address the relevant factors.[41] As set forth above, the period of time the Court has allotted for this meet and confer process is minimal—less than two weeks from the date of this Order. Under these circumstances, and because Plaintiff requests blanket tolling for the first time in the reply, Plaintiff's request to toll the statute of limitations is premature and denied without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Conditional Certification and Court Supervised Notice to Putative Class Members Pursuant to 29 U.S.C. § 216(b) (Doc. 58) is **granted in part**. The Court conditionally certifies a collective action for the following class of persons:

> All current and former Shop Managers and District Managers who were paid a day rate while working for Calvert's Express Auto Service & Tire anywhere in the United States, at any time from October 21, 2018, through the date the Court grants conditional certification.

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff shall provide a new notice form, revised in accordance with this Order, to Defendant for review by **October 11,**

---

[40] *See Koehler*, 93 F. Supp. 3d at 1267 (collecting cases).

[41] *See, e.g., id.* (discussing factors and declining to issue blanket ruling); *Nelson*, 2018 WL 3023195, at *7 (finding request premature at notice stage and declining to impose blanket ruling); *McFeeters v. Brand Plumbing, Inc.*, No. 16-1122-EFM-KGS, 2017 WL 552733, at *3–4 (D. Kan. Feb. 10, 2017) (discussing five-factor test).

**2022**.  Defendant shall have two business days from the receipt date of the revised notice to assert any objection that the form does not comply with this Order.  Defendant may not assert any new objection that it failed to raise in its opposition to the instant motion.  If Defendant raises any proper objection, the parties shall confer, and involve the Court only if they are unable to resolve the issue among themselves.  The revised joint proposed notice shall be filed no later than **October 17, 2022**.

        **IT IS FURTHER ORDERED BY THE COURT** that Defendant shall provide Plaintiff with a list of putative class members' names, current or last known addresses, email addresses, and phone numbers to facilitate Plaintiff disseminating notice by mail, email, and text message.  Plaintiff's request to post the notice at its places of business is denied.  Plaintiff's request for a reminder notice halfway through the notice period is granted.

        **IT IS SO ORDERED.**

        Dated: October 6, 2022

                                      S/ Julie A. Robinson
                                      JULIE A. ROBINSON
                                      UNITED STATES DISTRICT JUDGE