# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| **JEREMY HEITZMAN** and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>**CALVERT'S EXPRESS AUTO SERVICE & TIRE, LLC,**<br><br>　　　　Defendant. | Case No. 2:22-CV-02001-JAR-ADM |

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT

Plaintiff Jeremy Heitzman ("Plaintiff" or "Heitzman"), individually and on behalf the Settlement Collective (collectively, "Plaintiffs" or the "Settlement Collective") and Defendant Calvert's Express Auto Service & Tire, LLC ("Defendant" or "Calvert's"), submit this joint motion for approval of the settlement of Plaintiffs' claims brought against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19. The Settlement Agreement and Release (the "Settlement Agreement"), attached as Exhibit 1, represents a fair and reasonable resolution of Plaintiffs' and Defendant's (collectively, the "Parties") *bona fide* dispute over the FLSA claims, and meets the standards for judicial approval. The Court should approve the Settlement Agreement in full.

The Settlement Agreement provides Plaintiffs with an exceptional recovery in light of the risks inherent in continued litigation and trial. Defendant has defended the claims asserted in this Lawsuit and continues to deny that it committed any wrongdoing or violated any state or federal wage and hour laws. Given the costs, risks, and delays inherent to protracted litigation balanced against the benefits of settlement, the Parties' Settlement Agreement is in both Parties' best interest.

Accordingly, the Parties respectfully request the Court approve the Settlement Agreement (Ex. 1) in full.

## I.
## PROCEDURAL HISTORY

On October 21, 2021, Plaintiff Heitzman filed this lawsuit in the United States District Court for the Western District of Missouri, Western Division, captioned *Heitzman v. Calvert's Express Auto Service & Tire, LLC*, Case No. 4:21-cv-00767-FJG, alleging Defendant failed to pay all wages and the correct amount of overtime under the FLSA and state law. *See* ECF No. 1. On December 29, 2021, the Parties' Joint Motion to Transfer Venue to the United States District Court for the District of Kansas was granted and the Lawsuit was transferred, captioned *Heitzman v. Calvert's Express Auto Service & Tire, LLC*, Case No. 2:22-cv-02001-JAR-ADM (the "Lawsuit"). *See* ECF No. 20. Defendant filed its Answer to Plaintiff's Original Collective/Class Action Complaint on January 19, 2022, denied Plaintiff's allegations, and asserted numerous defenses to Plaintiff's claims. *See* ECF No. 28.

On May 20, 2022, the Parties attended mediation with Hollis Hanover. *See* ECF No. 51. The Parties were unable to reach a mutually agreeable resolution at the May 20, 2022 mediation. *See* ECF No. 57. However, the discussions conducted at the mediation provided valuable insight to reaching the present Settlement Agreement. On June 10, 1022, Plaintiff filed the Motion for Conditional Certification and Court Supervised Notice to Putative Class Members Pursuant to 29 U.S.C. § 216(b) and the accompanying Memorandum in Support. *See* ECF Nos. 58 and 59. Defendant filed its Memorandum in Opposition on July 1, 2022 (*See* ECF No. 63) to which Plaintiff Replied on July 15, 2022 (*See* ECF No. 64). After ordering slight changes to the proposed notice, this Court granted Plaintiff's Motion for Conditional Certification and Court Supervised Notice to Putative Class Members Pursuant to 29 U.S.C. § 216(b) on October 6, 2022. *See* ECF No. 65.

The Parties have engaged in extensive formal and informal discovery that has aided in the resolution of this matter. During formal discovery, both Parties served and responded to discovery.

In all, the Parties exchanged over 400 documents related to Plaintiff and the Putative Class Members' claims. Prior to mediation the Parties exchanged further documents informally so the Parties could calculate the Putative Class Members precise damages.

Prior to sending out the Notice to Putative Class Members, the Parties continued to participate in settlement negotiations as both sides were hopeful a resolution could be reached. On October 26, 2022, the Parties reached a settlement in principle. On November 2, 2022, the Parties files a Joint Notice of Collective Action Settlement. *See* ECF No. 71. On December 19, 2022, the Parties executed their formal Settlement Agreement that the Parties now request the Court approve. *See generally* Ex. 1.

## II.
## SUMMARY OF THE SETTLEMENT AGREEMENT'S KEY TERMS

### A. THE GROSS SETTLEMENT FUND

The Parties agreed to settle Plaintiffs' FLSA claims for $225,000.00 (the "Gross Settlement Fund"). *Id.* at ¶ I.K, III.A. The Gross Settlement Fund includes a Service Award to Plaintiff Heitzman, Collective Counsel's attorneys' fees and out-of-pocket litigation expenses, and the costs of settlement administration. *Id.* The portion of the Gross Settlement Fund remaining after the above deductions, subject to Court approval, shall be the Net Settlement Fund. The Net Settlement Fund includes the settlement payments to Plaintiff Heitzman and the Settlement Collective. Defendant shall not make any payment beyond the Gross Settlement Fund.

### B. IDENTIFICATION OF THE SETTLEMENT COLLECTIVE MEMBERS INCLUDED IN SETTLEMENT AGREEMENT

The Settlement Agreement includes Plaintiff Heitzman and all employees who worked for Defendant as Shop Managers and/or District Managers and were paid a day rate, at any time between October 21, 2018 through October 26, 2022, or have already joined the Lawsuit. These individuals (43 in total, including Plaintiff Heitzman) make up the Settlement Collective. *See id.* at ¶ I.U.

C. **THE NET SETTLEMENT ALLOCATION**

As discussed throughout, the Parties agreed to a *pro rata* allocation of the Net Settlement Fund based on the number of workweeks worked by the Settlement Collective Members during the applicable time period. Ex. 1 at ¶ III.B.4.

D. **LIMITED RELEASE OF WAGE AND HOUR CLAIMS AGAINST DEFENDANT**

The Settlement Agreement provides that

> Upon Approval by the Court of the Settlement, the Participating Settlement Collective Members who endorse and deposit or otherwise negotiated their Settlement Checks shall fully discharge the Released Parties from any and all known or unknown claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, interests, and causes of action of whatever kind or nature relating in any way to the failure to properly compute wages during the Collective Period or to the facts and claims that were alleged or that reasonably arise out of the acts alleged in the Lawsuit, which includes all claims for uncompensated time, minimum wages, overtime wages, or any other wages, including, but not limited to, claims arising under the FLSA, state statutes governing minimum wages, overtime wages, and payment of wages, wage notices, state common law (breach of contract, unjust enrichment and other common law claims), and any other federal, state, or local law, rule, regulation, ordinance, or public policy. The release encompasses any claims, damages, costs, fees, or expenses that are derivative of the claims being released. All the claims released are referred to as "Released Claims".

*Id.* at ¶ IV. Plaintiff Heitzman also executed an individual General Release Agreement in his role as Named Plaintiff, and in further consideration for his Service Award. A copy of Plaintiff Heitzman's General Release Agreement is attached to the Settlement Agreement as Exhibit 2. *See id.* at Ex. 1.2.

E. **COLLECTIVE COUNSEL'S NEGOTIATED FEE AND COST AWARD**

Under the Settlement Agreement, Collective Counsel shall receive their attorneys' fees and costs in the amount of $90,000.00, which is 40% of the Gross Settlement Amount.[1] *Id.* at ¶ III.B.3.i. Although the attorney-client contract between Collective Counsel and Plaintiff Heitzman entitles

---

[1] The $90,000.00 amount sought as attorneys' fees and litigation expenses is significantly less than Collective Counsel's lodestar in this matter. *See* Declaration of Clif Alexander, attached as Exhibit 2 at ¶ 18.

Collective Counsel to recover their out-of-pocket expenses in *addition* to 40% of the Gross Settlement Amount, Collective Counsel is not seeking to recover their expenses separately.

**F.    SERVICE AWARD FOR PLAINTIFF HEITZMAN**

Pursuant to the terms of the Settlement Agreement, and subject to Court approval, Plaintiff Heitzman will receive a $10,000.00 Service Award in recognition of the time and effort he expended on behalf of the Settlement Collective, as well as for his execution of a General Release Agreement in his individual capacity.

## III.
## ARGUMENT & AUTHORITIES

**A.   THE LEGAL STANDARD FOR APPROVAL OF FLSA SETTLEMENTS**

Under the FLSA, non-exempt employees must be paid overtime for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207. An employer who violates the FLSA is liable for the unpaid overtime and may be liable for "an additional equal amount as liquidated damages" if the employer cannot "show to the satisfaction of the court that the act or omission giving rise to such action was in good faith." 29 U.S.C. §§ 216(b), 260. "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* The statute of limitations for claims under the FLSA is two years, or three years if the employer's violation was willful. 29 U.S.C. § 255(a).

Courts have held that FLSA claims asserted in a private action may be compromised after the district court reviews and approves the terms of the settlement. *Morton v. Transcend Servs., Inc.*, No. 15-CV-1393-PAB-NYW, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "However, this extensive review of every FLSA settlement has never been required by the Tenth Circuit." *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019) (collecting cases). "Moreover,

5

though Tenth Circuit district courts are split regarding the application of *Lynn's Food Stores* in this circuit, the majority of districts … have held that such approval is not necessary." *Id.* (collecting cases).

"Settlements may be permissible in the context of a suit brought by employees because initiation of the action . . . provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F.2d at 1354. "The employees are likely to be represented by an attorney who can protect their rights under the statute." *Id.* Under these circumstances, the court should approve a settlement that represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1354-55.

## B. THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT

### 1. The Settlement Resolves a *Bona Fide* Dispute.

"Parties requesting approval of an FLSA settlement must provide the court with sufficient information to determine whether a bona fide dispute exists." *Morton*, 2017 WL 977812, at *1 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)).

Calvert's provides autobody repair and maintenance services throughout the states of Missouri, Illinois, and Kansas.[2] *See* ECF No. 1. Defendant employed the Settlement Collective Members as Shop Managers and District Managers to work in their shops throughout Missouri, Illinois, and Kansas. Plaintiffs allege that Defendant paid the Settlement Collective Members a day rate, only, for each day worked. As a result, Plaintiffs allege that Defendant did not pay the Settlement Collective overtime rates for hours worked over forty. Plaintiffs strongly contend they are entitled to overtime paid at one and one-half times an employee's regular rate of pay pursuant to the FLSA. On the other hand, Defendant hotly contests Plaintiffs' claims. Defendant denies they have violated the FLSA in any manner, including failing to pay the Settlement Collective Members overtime.

---

[2] https://calvertsexpress.com/story

Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is a *bona fide* dispute. The Parties acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the *bona fide* disputes between them through settlement.

### 2. The Terms of the Settlement are Fair and Reasonable.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-CV-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). Courts assessing an FLSA settlement for fairness and reasonableness often examine the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *McKeon v. Integrity Pizza LLC*, No. 18-CV-932-WJM-KLM, 2020 WL 6782238, at *2 (D. Colo. Nov. 18, 2020) (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Delvin v. Scardelletti*, 536 U.S. 1 (2002)); *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *4 (D. Kan. Jan. 3, 2017) (citing *Barbosa v. Nat'l Beef Packing Co.*, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Hoffman*, 2017 WL 25386, at *4.

### a. The Agreement Was Fairly and Honestly Negotiated.

First, the Settlement Agreement was fairly and honestly negotiated by counsel highly experienced with FLSA collective actions. *See generally* Ex. 2. Prior to their good faith, arms-length settlement negotiations, the Parties exchanged substantial data showing the days and weeks worked and compensation received by Plaintiff Heitzman and the Settlement Collective Members, as well as other

7

information and documents regarding Defendant's practices, Plaintiffs' job duties, and Defendant's efforts to comply with the FLSA and related state wage and hour laws. *See id.* ¶¶ 20–21. The Parties created damages calculations based on this data. The Parties went through numerous offer and demand cycles throughout the pendency of the lawsuit until they finally reached a settlement in principle on October 25, 2022. The negotiations by experienced wage and hour counsel demonstrate the Settlement Agreement was fairly and honestly negotiated. *See id.*

### b.     The Ultimate Outcome of the Litigation Was (and Is) Unknown.

Second, questions of law and fact exist as to whether Defendant are liable to Plaintiff Heitzman and the Settlement Collective Members and, if so, in what amount(s). The Parties dispute whether Plaintiffs were properly paid under the FLSA, whether Defendant acted in good faith and thus, whether liquidated damages are appropriate, and whether Defendant acted willfully (which would affect whether Plaintiffs may recover under a two-year or three-year statute of limitations). The proposed Settlement Agreement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

### c.     The Value of the Settlement to the Plaintiffs Is Significant.

Third, the immediate recovery offered by the proposed Settlement Agreement is even more valuable considering the legal and factual uncertainties related to the alleged liability and damages. If the Parties continue to litigate the matter instead of settling, the next steps will require the Parties to engage in additional lengthy and costly discovery, disputes and motion practice regarding decertification, which would likely be followed by cross-motions for summary judgment, and potential trial on liability and damages. *See id.* ¶ 24. Instead of undertaking this protracted litigation course which may result in no recovery to the Settlement Collective, the proposed Settlement Agreement guarantees Plaintiff Heitzman and the Settlement Collective Members will receive a substantial recovery.

Indeed, the degree of uncertainty here is high because Defendant vigorously contested Plaintiff Heitzman and the Settlement Collective Members' claims, denied that these employees were improperly paid or that any alleged damages are owed. Defendant also denied that Plaintiff Heitzman and the Settlement Collective Members are entitled to liquidated damages or that they acted willfully.

Even though this case was hotly contested, the Net Settlement Fund awards an approximate average of $2,364.80 to each Settlement Collective Member.[3] This Settlement Agreement represents substantial recovery considering Defendant's defenses to liability, the ongoing risks of litigation, and the real possibility of a protracted fight for allegedly unpaid overtime.

### d. The Parties Agree the Settlement Is Fair and Reasonable.

Fourth, the Parties agree that the Settlement Agreement is fair and reasonable. Plaintiff Heitzman, individually and on behalf of the Settlement Collective, and Defendant, have all signed the Settlement Agreement. Collective Counsel represents and warrants that they have the authority to settle the claims of the Settlement Collective Members and have signed the Settlement Agreement.

### e. The Attorneys' Fees Under the Agreement Are Reasonable.

Fifth, as discussed in greater detail *infra*, Collective Counsel's fee award is fair and reasonable. *See, e.g.*, *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019). The FLSA provides that the Court "shall … allow [plaintiff] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 WL 5269828, at *1 (W.D. Okla. Oct. 23, 2018). If the Court examines Collective Counsel's attorneys' fees, the Court should find they are within the customary fee range approved by courts in this Circuit (including in this District), and that the amount requested is fair and reasonable under the circumstances of this case. *See, e.g.*, *McKinley v. Mid-Continent*

---

[3] This average does not take into account the *pro rata* damage allocation, but is instead computed by dividing the estimated Net Settlement Fund by the number of Settlement Collective Members.

9

*Well Logging Serv., Inc.*, No. CIV-14-649-M, ECF 48 (W.D. Okla. Mar. 2, 2016) (approving fee award of 40% of gross settlement fund); *see also McMillian v. BP Service, LLC,* 2020 WL 4015259, at *3 (D. Kan. 2020) ("a 40% fee is fair and reasonable").

### C. THE ATTORNEYS' FEES AND COSTS ARE REASONABLE.

Collective Counsel's request for attorneys' fees in the amount of $90,000 is reasonable, fair and an important provision of the Parties' agreement. Ex. 1 at ¶ III.B.3. The FLSA provides "[t]he court … **shall**, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); *see also Garcia*, 770 F.3d at 1308; *Tabb*, 2018 WL 5269828, at *1. As courts across the country have recently recognized, district courts need not examine a separately negotiate attorney's fee award under an FLSA settlement. *See*, *e.g.*, *Barbee*, 927 F.3d 1024, 1027.[4]

Although an award of attorneys' fees under the FLSA is **mandatory**, district courts generally only examine (at most) whether the fee award in an FLSA settlement agreement is reasonable. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (recognizing that an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions); *Olivo*, 526 Fed. Appx. at 854 ("As prevailing parties on this claim, plaintiffs were entitled to an award of attorney's fees under 29 U.S.C. § 216(b)"); *Weiser v. Pathway Servs. Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *1 (N.D. Okla. Aug. 26, 2019) (same). An award is reasonable if it is "adequately

---

[4] *See also Horton v. Right Turns Supply, LLC*, 455 F. Supp. 3d 202, 206 (W.D. Pa. 2020) (emphasizing the court "does not believe it has authority to review the attorneys' fees component" of an FLSA settlement); *Donoho v. City of Pacific, Mo.*, No. 4:19-CV-186-NAB, 2019 WL 5213023, at *2 (E.D. Mo. Oct. 16, 2019) (refusing to review the attorney fee provision of the parties' FLSA settlement agreement because "the statute does not require approval of settled attorney's fees" and concluding that "[b]ecause the agreed fees are not so disproportionately exorbitant alone to indicate collusion when compared to the compensation paid to Plaintiffs, the settlement agreement – including attorney's fees – will be approved without inquiry or comment into the reasonableness of the attorneys' fees").

compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

"The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir. 1998); *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010). In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

In assessing the reasonableness of attorney fee awards in collective actions, some courts within the Tenth Circuit have considered twelve factors the Fifth Circuit outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id.* Considering the circumstances presented herein, Collective Counsel's requested

11

attorneys' fees and litigation expenses are imminently reasonable as both as a percentage of the total common settlement fund and under the *Johnson* factors.

> **1. FLSA Collective Actions are Inherently Complicated, and Collective Counsel is Experienced and Skilled in Handling the Same (Factors 2-4 and 9-10).**

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. *See, e.g.*, *Whittington*, 2013 WL 6022972, at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("[W]age and hour collective and class actions are, by their very nature, complicated and time-consuming"). Three fundamental questions governed this case: (1) whether the Plaintiff Heitzman and the Settlement Collective Members were exempt employees under the FLSA; (2) whether hours worked over forty in a workweek was compensable at a rate of one and one-half times an employee's regular rate of pay and (3) whether these questions could be resolved on a collective basis. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA.

Collective Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are beneficial in FLSA cases such as this. *See generally* Ex. 2. FLSA collective action cases such as this are the main focus of Collective Counsel's docket. Although Collective Counsel is based in Texas, Anderson Alexander, PLLC has a national docket of FLSA cases, with litigation across the United States. Ex. 2 at ¶¶ 4–17. Further, Collective Counsel has litigated hundreds of similar cases against employers with tremendous success and has a specialized knowledge of the industry. *Id.* at ¶ 17.

Collective Counsel's experience has caused them to review and become familiar with a large body of documents and information concerning FLSA litigation, as well as the evidence and testimony necessary to the successful prosecution of FLSA collective actions, which benefits cases such as this, and maximizes the settlement value of the case. *Id.*

Especially considering the number of Plaintiffs, resolving the procedural issues, merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972, at \*6. As courts in this Circuit have noted, attorneys handling such large classes are precluded by the ticking clock from taking other cases (factor 4), given that counsel took a chance on possible recovery in a contingent fee case rather than strictly working on an hourly basis. *Id.* Collective Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making this case relatively undesirable (factor 10). *See Aragon v. Clear Water Prod. LLC,* No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at \*6 (D. Colo. Dec. 18, 2018). Indeed, the possibility existed in this case that no recovery would be made for the time and efforts exerted by Collective Counsel.

### a.  The Time and Labor Required Was Substantial and Collective Counsel's Requested Costs Are Reasonable (Factors 1 and 7).

Regarding the time and efforts required of Collective Counsel (factors 1 and 7), this matter has been pending for more than a year. During this time, Collective Counsel, consisting of the five (5) lawyers who worked on this Lawsuit, local counsel, and multiple staff members performed extensive work. *See* Ex. 2 at ¶ 20–21 (describing Collective Counsel's time and effort spent on this case). Indeed, Collective Counsel have invested 373.6 hours of time in this litigation. *Id.* ¶ 18. This represents a significant amount of time expended to reach resolution of this Lawsuit with a corresponding lodestar of $194,755.00. *Id.*

In addition, to-date Collective Counsel has incurred $2,872.35 in unreimbursed costs. *Id.* at ¶ 27. "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Collective Counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, photocopying and duplication, fees for the distribution and processing of collective notice, postage, and other delivery or service fees, PACER

13

charges, and legal research. *See* Ex. 2 at ¶ 27. These are the types of costs normally billed to clients. *See Aragon*, 2018 WL 6620724, at *7. Although these expenses were reasonable and necessary for the successful prosecution of this case, Collective Counsel is not seeking to recover costs outside of negotiated $90,000.00 fee award.

### b. Collective Counsel Represented Plaintiff Heitzman and the Settlement Collective Members on a Contingency Basis (Factors 5, 6, 10, 12).

Next, the negotiated, and agreed upon, contingency fee (factors 5, 6, 10, and 12) in the contract between Plaintiff Heitzman and Collective Counsel provides for a contingency fee of 40% of the gross settlement amount. Ex. 2 at ¶ 28. Collective Counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which if not recovered, would be lost, and Collective Counsel would have carried various advanced costs, as well as unrecoverable time spent. *Id.* Collective Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery. *Id.*

Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g.*, *Aragon*, 2018 WL 6620724, at *6; *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *4 (D. Colo. 2015). The "process of reviewing and approving stipulated attorneys' fees in the event of a settlement [of FLSA claims] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA settlements "requires … deference … to the parties' agreement." *Id.*

14

      **c.**      ***Collective Counsel's Requested Fee is Within the Customary Range (Factors 5, 6, 12).***

As discussed *supra* in Section III(B)(2)(e), Collective Counsel's request for attorneys' fees in the amount of 40% of the Gross Settlement is well within the range of reasonableness for contingency fee cases in this Circuit and is significantly less than Collective Counsel's lodestar. Ex. 2, ¶ 18–19.

      **d.**      ***Degree of Success Obtained is High (Factor 8).***

Finally, "the most critical factor in determining a fee award is the degree of success obtained". *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). As discussed *supra* in Section III(B)(2)(c), the degree of success here is high and supports Collective Counsel's attorneys' fees. For these reasons, Collective Counsel's negotiated fee of 40% and is reasonable and necessary in this case.

**D.**      **THE COURT SHOULD APPROVE PLAINTIFF HEITZMAN'S SERVICE AWARD.**

Plaintiff Heitzman's requested Service Award is reasonable, and Defendant does not object to the same. Plaintiff Heitzman is able to receive a reasonable incentive payment as part of a class or collective action settlement. *See, e.g.*, *Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) (granting FLSA named plaintiffs normal service awards of $20,000); *Shaw*, 2015 WL 1867861, at *1 (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken*, 2010 WL 5387559, at *8 (approving $10,000 service award to named plaintiff).

## IV.
## CONCLUSION.

For all the reasons set forth herein, Plaintiff Heitzman respectfully requests the Court approve the Parties' Settlement Agreement (Ex. 1) in full.

15

Date:  December 19, 2022                                     Respectfully submitted,

| | |
|---|---|
| **PAUL LLP** | **The Porto Law Firm** |
| /s/ *Laura C. Fellows* | By: *Nicholas J. Porto* (with permission) |
| **Richard M. Paul III** (KS #17778) | **Nicholas J. Porto**    MO #56938 |
| **Laura C. Fellows** (KS #26201) | 1616 West 45th Street |
| 601 Walnut Street, Suite 300 | Kansas City, Missouri 64111 |
| Kansas City, Missouri 64106 | Telephone: 816.463.2311 |
| Telephone: (816) 984-8100 | Facsimile:  816.463.9567 |
| Rick@PaulLLP.com | nporto@portolaw.com |
| Laura@PaulLLP.com | |
| | **Franco Moroney Buenik, LLC** |
| **ANDERSON ALEXANDER, PLLC** | |
| | **Randall W. Slade** (*Pro Hac Vice*) |
| **Clif Alexander** (*Pro Hac Vice*) | Illinois Bar No. 6290778 |
| Texas Bar No. 24064805 | 500 West Madison Street, Suite 3900 |
| clif@a2xlaw.com | Chicago, Illinois 60661 |
| **Austin W. Anderson** (*Pro Hac Vice*) | Telephone: 312-466-7225 |
| Texas Bar No. 24045189 | Facsimile:  312-469-1011 |
| austin@a2xlaw.com | randall.slade@francomoroney.com |
| **Carter T. Hastings** (*Pro Hac Vice*) | |
| Texas Bar No. 24101879 | **Counsel for Defendant Calvert's Express Auto Service & Tire, LLC** |
| carter@a2xlaw.com | |
| 819 N. Upper Broadway | |
| Corpus Christi, Texas 78401 | |
| Telephone: (361) 452-1279 | |
| Facsimile: (361) 452-1284 | |
| | |
| **Counsel for Plaintiff and the Settlement Collective** | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on December 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Laura C. Fellows*