IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEREMY HEITZMAN, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALVERT'S EXPRESS AUTO SERVICE & TIRE, LLC,<br><br>Defendant. | Case No. 22-CV-2001-JAR-ADM |

### MEMORANDUM AND ORDER

Plaintiff Jeremy Heitzman, on behalf of himself and others similarly situated, brings this putative collective action under the Fair Labor Standards Act ("FLSA"), and putative class action under the Missouri Minimum Wage Law ("MMWL"), against Defendant Calvert's Express Auto Service & Tire, LLC. This matter is before the Court on the parties' Joint Motion for Approval of FLSA Settlement (Doc. 79). For the reasons explained below, the Court denies without prejudice the motion because the parties failed to submit information sufficient for the Court to make the requisite findings for final collective action certification. The Court preliminarily approves the settlement agreement, with the exception of the service award, and orders the parties to file a renewed motion addressing final class certification. The parties shall also address their remaining state law claim under the MMWL by either filing a stipulation of dismissal or by indicating in their renewed motion the status of this claim.

### I.     Background

Defendant Calvert's Express Auto Service & Tire, LLC ("Calvert's") is a company that provides autobody repair and maintenance services throughout the states of Missouri, Illinois, and Kansas. Each location services customers by performing routine maintenance and repair

work on customers' vehicles. Plaintiff Jeremy Heitzman worked for Defendant as a Shop Manager from approximately April of 2018, until approximately September of 2021.

Plaintiff filed his Complaint in the United States District Court for the Western District of Missouri on October 21, 2021, alleging that he, and others similarly situated, regularly worked more than forty hours per week but were paid a day rate plus bonus that was not based on their overtime hours actually worked. The Complaint alleges a putative collective action claim for FLSA overtime pay violations, and a putative class action for overtime pay violations under the MMWL.[1] The case was transferred to this Court on a joint motion by the parties on December 29, 2021.[2] On October 6, 2022, this Court conditionally certified a FLSA collective action for the following class of persons:

> All current and former Shop Managers and District Managers who were paid a day rate while working for Calvert's Express Auto Service & Tire anywhere in the United States, at any time from October 21, 2018, through the date the Court grants conditional certification.[3]

On November 2, 2022, the parties notified the Court that they had reached "an amicable resolution of this matter on a collective, opt-in basis,"[4] and on December 19, 2022, they filed the pending joint motion seeking settlement approval. The motion asks the Court to "approve the Settlement Agreement in full,"[5] which pertains to the FLSA claims only. The motion does not mention the state law claims, nor does it seek final collective action certification.

---

[1] Doc. 1.

[2] Doc. 20.

[3] Doc. 65.

[4] Doc. 71.

[5] Doc. 79 at 1.

Under the parties' settlement agreement, Defendant will pay a total of $225,000 (the "settlement fund") in exchange for a release of claims. The settlement fund is to be allocated as follows: $6,760 in fees and expenses incurred by an independent claims administrator, a $10,000 service award to Plaintiff Heitzman, and attorneys' fees to Plaintiff's counsel not to exceed $90,000, with the remaining settlement fund allocated on a pro rata basis to all collective action members.

## II.     FLSA Claims

### A.     Final Collective Action Certification

The FLSA allows an employee to bring a collective action on the employee's behalf and "other employees similarly situated."[6] The court may certify an opt-in collective action so long as the aggrieved employees are similarly situated.[7] Section 216(b) does not define "similarly situated," but the Tenth Circuit has approved an *ad hoc* case-by-case basis for determining whether employees are "similarly situated" for purposes of § 216(b).[8] This involves a two-step inquiry.[9] The first step occurs at the "notice stage" of the proceedings. Here, the court determines if certification is proper for purposes of sending notice of the action to potential collective action members.[10] At this stage, the court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy

---

[6] 29 U.S.C. § 216(b); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).

[7] Id.

[8] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102, 1105 (10th Cir. 2001).

[9] *Id.* at 1101–03.

[10] *Id.* at 1102.

3

or plan."[11]  This standard is lenient and typically results in conditional certification.[12]  Indeed, the Court evaluated substantial similarity under this lenient standard and granted conditional certification in its October 6, 2022 Order.[13]

The second step of the substantial-similarity inquiry applies when evaluating final certification and requires the Court to consider several factors, including: "(1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations."[14]  Courts in the District of Kansas generally require the parties to present facts to support final certification under these factors before approving a collective action settlement.[15]  Because the parties' motion for settlement approval fails to address this issue, the Court cannot provide final settlement approval.  Therefore, the Court denies the parties' joint motion without prejudice to refiling.  The parties shall submit a renewed motion for settlement approval that addresses the factors necessary for this Court to issue final collective action approval.  In the

---

[11] *Id.* (alterations omitted) (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)); *see also Blair v. TransAm Trucking, Inc.*, 309 F. Supp. 3d 977, 1001 (D. Kan. 2018) (citing *Thiessen*, 267 F.3d at 1102).

[12] *Blair*, 309 F. Supp. 3d at 1001 (citing *Thiessen*, 267 F.3d at 1103).

[13] Doc. 65.

[14] *Foster v. Robert Brogden's Olathe Buick GMC, Inc.*, No. 17-2095-DDC-JPO, 2019 WL 6715470, at *2 (D. Kan. Dec. 10, 2019) (quoting *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 5306273, at *3 (D. Kan. Oct. 29, 2012)).

[15] *See, e.g.*, *id.*; *James v. Boyd Gaming Corp.*, No. 19-2260-DDC, 2022 WL 4482477, at *7 (D. Kan. Sept. 27, 2022); *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2015 WL 4920292, at *4 (D. Kan. Aug. 18, 2015). *But see Jackson v. U.S. Bancorp.*, No. 20-2310-EFM, 2022 WL 744693, at *2 (D. Kan. Mar. 11, 2022) (declining to require final collective action approval because "some . . . courts have expressly recognized that approval of an FLSA settlement does not require final approval of a collective action") (first citing *Johnston v. N. Fla. Reforestation Servs.*, No. 20-539, 2021 WL 6205946, at *1 n. 2 (M.D. Fla. Dec. 23, 2021); then citing *Urbas v. Nutritious Lifestyles, Inc.*, No. 19-855-34, 2020 WL 264686, at *3 n.2 (M.D. Fla. Jan. 2, 2020); then citing *Metzler v. Med. Mgmt. Int'l, Inc.*, No. 19-2289-T-33, 2020 WL 5994537, at *1-2 (M.D. Fla. Oct. 9, 2020); and then citing *Banks v. Pyramid Consulting, Inc.*, No. 18-078, 2019 WL 3328493, at *1 (S.D. Cal. Jan. 28, 2019)).

meantime, the Court proceeds to consider in this Order whether it should preliminarily approve the proposed settlement agreement.

**B.    Settlement**

A settlement of collective action claims under the FLSA must be presented to the Court for review and a determination of whether it is fair and reasonable.[16]  In order to approve the settlement, "the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned.  The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness."[17]  Additionally, the settlement agreement must contain an award of reasonable attorneys' fees.[18]

**1.    Bona Fide Dispute**

Plaintiff alleges that Defendant did not pay members of the collective action overtime rates for hours worked over forty.  Thus, Plaintiff contends the putative collective action members are entitled to overtime paid at one and one-half times their regular rate of pay pursuant to the FLSA.  Defendant denies it has violated the overtime requirements of the FLSA.  If Plaintiff is correct, Defendant may owe a substantial sum.  If Defendant is correct, Plaintiff and the putative class members could recover nothing.  Thus, the Court finds that a bona fide dispute exists.

---

[16] *See, e.g.*, *Peterson v. Mortgage Sources, Corp.*, No. 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

[17] *Id.* (citations omitted).

[18] *Id.*; *see* 29 U.S.C. § 216(b).

### 2. Fair and Reasonable

"To be fair and reasonable, an FLSA settlement must be reasonable to the employee and must not frustrate the policies embodied in the FLSA."[19] Courts may look to the framework for evaluating class action fairness as instructive when evaluating whether an FLSA settlement is fair and reasonable, which requires consideration of the following factors:

> (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.[20]

Here, the settlement agreement was fairly and honestly negotiated by counsel highly experienced with FLSA collective actions. Prior to their good faith, arms-length settlement negotiations, the parties exchanged substantial data showing the days and weeks worked and compensation received by Plaintiff Heitzman and members of the collective action, as well as other information and documents regarding Defendant's practices, the collective action members' job duties, and Defendant's efforts to comply with the FLSA and related state wage and hour laws. The parties created damages calculations based on this data. They went through numerous offer and demand cycles throughout the pendency of the lawsuit until they finally reached a settlement in principle on October 25, 2022.

Also, serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt. The parties dispute whether members of the collective action were properly

---

[19] *Valdez v. Se. Kan. Indep. Living Res. Ctr.,* No. 10-1194-KHV/DJW, 2011 WL 1231159, at *2 (D. Kan. Mar. 29, 2011).

[20] *Id.* (citing *McCaffrey v. Mortg. Sources, Corp.,* No. 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011)).

paid under the FLSA, whether Defendant acted in good faith and thus, whether liquidated damages are appropriate, and whether Defendant acted willfully (which would affect whether a two-year or three-year statute of limitations applies).

The parties have also demonstrated that the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation. If they continue to litigate the matter instead of settling, the next steps will require them to engage in additional lengthy and costly discovery disputes and motion practice regarding decertification, which would likely be followed by cross-motions for summary judgment, and potential trial on liability and damages.

Finally, the parties represent to the Court their opinion that the settlement is fair and reasonable. Plaintiff views the settlement as opportunity for substantial recovery by the collective action members considering Defendant's defenses to liability, the ongoing risks of litigation, and the real possibility of a protracted fight for allegedly unpaid overtime.

In sum, after considering all requisite factors, the Court finds that the settlement agreement is fair and reasonable.

### 3. Attorney's Fees

The FLSA requires an award of reasonable attorney's fees and costs.[21] The Court, however, has the discretion to determine the amount and reasonableness of the award.[22] When inquiring into the reasonableness of the fee, the Court must consider "whether plaintiffs' counsel are adequately compensated and ensure that a conflict of interest does not taint the amount plaintiffs receive under the agreement."[23]

---

[21] 29 U.S.C. § 216(b); *Christeson v. Amazon.com.ksdc, LLC*, No. 18-2043-KHV, 2019 WL 354956, at *8 (D. Kan. Jan. 29, 2019) (citations omitted).

[22] *Christeson*, 2019 WL 354956, at *8; *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *5 (D. Kan. Jan. 3, 2017).

[23] *Valdez*, 2011 WL 1231159, at *3 (citation omitted).

Here, the settlement agreement allows Plaintiff's counsel to apply for and receive attorney's fees, costs, and expenses not to exceed $90,000, and provides that Defendant's counsel will not object to a fee application up to this amount. This amount represents 40% of the total settlement fund. Several decisions from the District of Kansas indicate that the Court must skeptically examine an attorney fee award when a defendant has agreed to not contest it.[24]

In determining reasonableness in a common fund case such as this one, the Tenth Circuit applies a hybrid approach, combining the percentage fee method with the factors traditionally used to determine reasonableness set forth in *Johnson v. Georgia Highway Express, Inc.*[25] Under this method, "the percentage reflected in a common fund award must be reasonable; and, as in the statutory fee cases, the district court must 'articulate specific reasons for fee awards to give us an adequate basis.'"[26] In so doing, the Court considers the following *Johnson* factors: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[27]

---

[24] *Christeson*, 2019 WL 354956, at *8; *see also Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC, 2016 WL 2848919, at *4 (D. Kan. May 16, 2016) (citing *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2014 WL 5099423, at *9 (D. Kan. Oct. 10, 2014)).

[25] 488 F.2d 714 (5th Cir. 1974); *see Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Marquez v. Midwest Div. MMC, LLC*, No. 19-2362-DDC, 2022 WL 17093036, at *5 (D. Kan. Nov. 21, 2022) (citations omitted).

[26] *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)).

[27] *See Johnson*, 488 F.2d at 717–19.

The Court has considered the reasonableness of the $90,000, or 40%, fee award under the requisite factors and finds it reasonable for several reasons.  This matter has been pending for a little over one year.  During this time, Plaintiff's counsel, consisting of the five lawyers who worked on this lawsuit, local counsel, and multiple staff members, performed extensive work.  Indeed, counsel invested 373.6 hours of time in this litigation, which they reduced in the exercise of billing judgment to 275.7 hours, with a corresponding lodestar of $142,280.  The hours expended include initial intake for Plaintiff, research on the claims and business structure of Defendant, drafting the Complaint, seeking transfer, exchanging data with Defendant, engaging in settlement negotiations and mediation, and litigating the motion for conditional certification.  Plaintiff's counsel drafted the instant motion and will continue to devote time and resources to resolving this matter after the settlement agreement is approved.

Counsel have specialized skill, knowledge, reputation, and experience in FLSA cases such as this.  Although Anderson Alexander, PLLC is based in Texas, it devotes 95% of the practice to representing workers in class and collective actions under the FLSA, with litigation across the United States.  The firm has litigated hundreds of similar cases against employers with success and has a specialized knowledge of the industry.  This specialized skill benefits cases such as this, and maximizes the settlement value of the case.  Nonetheless, resolving the procedural issues, merits, and calculating damages in this case was inherently risky, costly, and time-consuming.  Counsel was unable to accept other promising cases upon deciding to engage in this litigation.

The contract between Plaintiff and his counsel provided for representation on a contingency fee basis.  Anderson Alexander, PLCC agreed to cover all case expenses and litigation costs on a 40% contingency fee basis, in addition to reimbursement of litigation costs

and expenses actually incurred. The attorney fee award of 40% of the settlement fund tracks this 40% contingency fee agreement. Moreover, despite incurring $3,122 in costs and expenses, counsel agrees not to seek this additional amount. Importantly, $90,000 is far less than the lodestar calculation of $142,280.

The Court further finds the attorney fee award of $90,000, or 40%, is consistent with awards approved in similar cases. Courts in the District of Kansas historically approve fee awards in FLSA collective action cases from between "four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars."[28] While 40% is "near the high end" of this range, the Court finds that it is reasonable in light of the 40% contingency fee this Plaintiff agreed to, the fact that the total fee award is deeply discounted from the lodestar, and because counsel has agreed not to seek its reimbursable costs and expenses in addition to this amount, despite the provision in its contingency fee agreement entitling it to do so.[29]

In sum, the Court approves of counsel's application for attorney's fees in the amount of $90,000 under the settlement agreement.

### 4. Service Award

"The Court also must examine any proposed service award payments to determine whether they are fair and reasonable."[30] Courts in this district consider the reasonableness of service awards in light of the amount of time the named plaintiff spent on the case.[31] Other

---

[28] *McMillian v. BP Serv., LLC*, No. 19-2665-DDC, 2020 WL 4015259, at *3 (D. Kan. July 16, 2020) (citations omitted).

[29] *See id.*

[30] *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC, 2016 WL 2848919, at *4 (D. Kan. May 16, 2016) (citations omitted).

[31] *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2015 WL 492092, at *6 & n.7 (D. Kan. Aug. 18, 2015).

factors include the typical hourly rate of the named plaintiff in his regular employment, and the reputational risk undertaken by serving as a named plaintiff.[32]

Here, the settlement agreement provides for a $10,000 service award to Plaintiff Heitzman. According to Clif Alexander's Supplemental Declaration submitted in support of this award, Plaintiff spent "countless hours communicating with Collective Counsel," and spent considerable time producing documents, reviewing damage estimates, responding to discovery, preparing his declaration in support of conditional certification, being "on call" during mediation, and reviewing the settlement agreement.[33] Yet, Alexander's declaration provides no estimate of the amount of hours Plaintiff Heitzman spent on this litigation, nor what his hourly wage is in his regular employment. In the absence of such evidence, courts in this district have found that $20 per hour is fair and reasonable.[34]

The supplemental declaration supports a finding that Plaintiff incurred reputational harm by publicly attaching his name to this lawsuit against his former employer, which the Court factors in to its decision to reduce the requested service award to $2,000. The Court finds that this is a fair and reasonable service award in light of the unidentified hours Plaintiff Heitzman spent on this litigation, the unidentified rate of pay that he would have to forgo from his regular employment in order to participate in this lawsuit, and the fact that the litigation has only been pending for a little over a year. The Court otherwise preliminarily approves the request to designate Plaintiff Heitzman as the Representative Plaintiff under 29 U.S.C. § 216(b) and

---

[32] *See Marquez v. Midwest Div. MMC, LLC*, No. 19-2362-DDC, 2022 WL 17093036, at *4 (D. Kan. Nov. 21, 2022) (citations omitted).

[33] Doc. 84-1 at 3.

[34] *See Barbosa*, 2015 WL 4922092, at *6 & n.7; *James v. Boyd Gaming Corp.*, No. 19-2260-DDC, 2022 WL 4482477, at *7 (D. Kan. Sept. 27, 2022).

appoint Collective Counsel, as defined by the settlement agreement, as counsel for the Settlement Collective for purposes of settlement only.

### 5. Settlement Administration

The settlement agreement provides that a third party claims administrator will be engaged, and that the fees and expenses of this claims administrator will be paid from the settlement fund before distribution to members of the collective action. Plaintiff has submitted evidence that Collective Counsel intends to retain ILYM Group, Inc. as a claims administrator, and provides a quote that its fees and costs should amount to $6,760 in this case. The Court finds this amount is fair and reasonable.[35]

## III. State Law Claim under the MMWL

Plaintiff's Complaint alleges a state law claim under the MMWL for overtime pay, which is not subject to the collective action provisions of the FLSA. Thus, this claim is not addressed by the parties' settlement agreement. The parties shall either file a stipulation of dismissal as to this claim, or notify the Court in their renewed motion of the status of the state law claim in light of their settlement agreement.

## IV. Summary

In sum, the Court denies the parties' motion without prejudice to refiling. The parties shall file a renewed motion that addresses final collective action certification and advises the Court of the status of the remaining state law claim. The Court preliminarily approves the settlement agreement, with the exception of the service award to Plaintiff Heitzman, which the Court reduces to $2,000.

---

[35] *See James*, 2022 WL 4482477, at *12.

**IT IS THEREFORE ORDERED BY THE COURT** that the parties' Joint Motion for Approval of FLSA Settlement (Doc. 79) is denied without prejudice to refiling. The Court preliminarily approves the settlement agreement, with the exception of the service award, which it reduces to $2,000. The parties' renewed motion shall address final class certification and the status of their remaining state law claim under the MMWL.

**IT IS SO ORDERED.**

Dated: February 17, 2023

                                                S/ Julie A. Robinson
                                                JULIE A. ROBINSON
                                                UNITED STATES DISTRICT JUDGE